**In re Frank L. PRYOR, Jr., Debtor.**

**LAWTER INTERNATIONAL, INC., Plaintiff,**

v.

**Frank L. PRYOR, Jr., Defendant.**

**Bankruptcy No. 87–07019–H3–7. Adv. No. 87–1008–H3.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 30, 1988.

Andrew L. Shapiro, Porter & Clements, Houston, Tex., for plaintiff.

Edward L. Rothberg, Liddell, Sapp & Zivley, Houston, Tex., for debtor.

## MEMORANDUM AND ORDER

LETITIA Z. CLARK, Bankruptcy Judge.

Trial having been held March 11, 1987 in this case, and the court having considered the pleadings, trial statements, evidence, arguments, and post-trial briefs herein, enters the following Memorandum and Order of nondischargeability. To the extent any findings of fact contained herein are considered to be conclusions of law, they are hereby adopted as such; to the extent any conclusions of law contained herein are considered to be findings of fact, they are hereby adopted as such.

This case was brought by Lawter International, Inc. (hereinafter "Lawter") to determine whether a judgment obtained by Lawter in state court in the amount of $322,882.07 plus interest and attorneys fees in the amount of $5,000.00, was nondischargeable pursuant to Section 523(a)(2)(B) of the Bankruptcy Code.

The parties stipulated at the beginning of the trial to various relevant facts, including the following:

1. The sum of $322,882.07 in the judgment in state court was money which had been guaranteed by Debtor Frank Pryor, Jr. in his individual capacity, by virtue of notes and guaranties dated April 8, 1985, May 15, 1986, August 4, 1986, and November 21, 1986.

2. In connection with the notes and guaranties given, Debtor furnished three financial statements to Lawter. These showed dates on the statements of December 28, 1983, December 28, 1984, and December 30, 1985, and dates on which they were signed by Debtor and sent to Lawter, of, respectively, November 30, 1984, March 1, 1985, and May 15, 1986.

3. Debtor listed assets on these financial statements which were actually held in his former wife's estate and for which neither he nor his present wife had legal title.

4. By the dates indicated on the third financial statement, the Riverbend residence listed by Debtor as a personal asset had been transferred to a corporation he owned and had been encumbered by a $1.6 million dollar loan.

5. Neither the transfer nor the $1.6 million dollar liability of Debtor were shown on the third financial statement.

The only contested issues remaining to be determined pursuant to 11 U.S.C. § 523(a)(2)(B) are whether Debtor intended to deceive the lender, Lawter, and whether the lender reasonably relied on the financial statements.

■ Intent to deceive may be inferred from use of a false financial statement to obtain credit. *In re Simpson*, 29 B.R. 202 (Bankr.N.D.Ohio 1983). The court noted:

Because direct proof of intent (*i.e.*, debtor's state of mind) is nearly impossible to obtain, a creditor may present evidence of the surrounding circumstances from which intent may be inferred. *Id.* at 211. The Fifth Circuit has also addressed the question, finding intent to deceive can be inferred if the financial statements reflect a reckless disregard for accuracy. *In re Bardwell*, 610 F.2d 228 (5th Cir.1980). See also *In re Houtman*, 568 F.2d 651 (9th Cir.1978) (either actual knowledge of the falsity of a statement or reckless disregard for its truth satisfies scienter requirement for nondischargeability of a debt). In *In re Walthall*, 38 B.R. 140 (Bankr.D.Md.1984), the court held that the debtor's intentional omission of at least one-half of her outstanding debts was sufficient to establish intent to deceive. *Id.* at 143. And see *In re Harms*, 53 B.R. 134 (Bankr.D.Minn. 1985).

■ The stipulations identified demonstrate a reckless disregard for accuracy in these financial statements and demonstrate intent to deceive, regardless of whether at the time of submittal, Debtor believed he intended to pay back the loans. *In re Walthall, supra*, at 142.

■ In addressing the issue of reliance, the Vice President of Lawter, Mr. William Russell, testified that he spoke with the Debtor on a number of occasions regarding the financial statements, and was never given any indication that the information was inaccurate or had changed. He also testified that such forms of credit check readily available to an out of state company, such as Dunn & Bradstreet, were of no value as to credit of individuals serving as guarantors. Mr. Russell was credible. A signed financial statement is in itself a document calling for reliance. A lender is not charged with assuming that each loan applicant is trying to deceive. Mr. Pryor was an experienced businessman with no known history of deception in business matters. He so presented himself to Lawter, and was accepted as such. There were no "red flags" in the financial statement of a nature to put a lender "on guard" to dig deeper than the data the loan applicant had

chosen to reveal. The mere fact that the financial statement was in the name of Mr. and Mrs. Frank Pryor, Jr. is not sufficient to put the proposed lender on notice that some of the property shown might be "separate property," where the financial statement was supplied to support a guaranty to be signed only by Mr. Pryor, a resident of a community property state. Nor would inquiry into separate property of the present Mrs. Pryor have protected the lender from being deceived as to the status of the property Mr. Pryor claimed which was in fact property of the estate of his former wife Patricia. This property by devise was to pass to a trust of which Mr. Pryor was one of the beneficiaries, but would not pass directly to him. The trust had not been funded at time of trial. Lawter's reliance was reasonable under the circumstances. See *In re Garman*, 643 F.2d 1252 (7th Cir.1980), *cert. denied, Garman v. Northern Trust Co.*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981) (addressing former Bankruptcy Act); *In re Icsman*, 64 B.R. 58 (Bankr.N.D.Ohio 1986); *In re Nance*, 70 B.R. 318 (Bankr.N.D.Tx.1987), *In re Lind*, 6 B.R. 374, 378 (S.D.Tx.1980) (lender's decision need not be based solely on financial statement). It is therefore

ORDERED that the sum of $322,882.07, plus interest and attorneys fees in the state litigation in the amount of $5,000.00, for a total of $327,882.07 is determined to be nondischargeable in bankruptcy herein; interest at the rate of 7.59% from date of entry of judgment herein is also nondischargeable.